IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. )
) CRIMINAL NO. 05-10237-MLW
ANTOIN QUARLES COMBS )

SUPPLEMENTAL EXPERT DISCLOSURE
PURSUANT TO FED.R.CRIM.P. 16(a)(1)(G)

The United States respectfully submits this supplemental expert disclosure pursuant to Fed.R.Crim.P. 16(a)(1)(G) and Fed. R. Evid. 702. The government filed its initial disclosure on January 13, 2006. Trial in this case is scheduled for March 27, 2006.

I. **Fingerprint Analysis**[1]
   **Ron Smith of Ron Smith & Associates**
   **Meridian, Mississippi**

   **Forensic Detective Timothy Sethman**
   **Westmoreland County Detective Bureau Forensic Unit**
   **Greensburg, Pennsylvania**

As described in more detail in the previous filing, Mr. Smith and/or Detective Sethman will testify how the firearm and ammunition were processed for prints and that a latent print suitable for comparison was developed on the grip.[2] Mr. Smith is expected to testify that a comparison was made with the defendant's

---

[1] The United States has not made a final decision as to whether just one, or both, of these individuals will testify. All of the reports, and associated worksheets, as well as the CVs of Mr. Smith and Detective Sethman, were attached to the prior disclosure.

[2] The print was recovered after black electrical tape had been removed from the grip.

known prints and "no identification was effected." In addition, both Mr. Smith and Detective Sethman would be expected to testify that in their experience, firearms do not yield a significant percentage of latent identifiable prints. In the work Mr. Smith's company did for the Boston Police Department from February to May 2005, identifiable latent prints were recovered from about 8 percent of the handguns analyzed. Detective Sethman estimates that in his own experience examining in excess of 300 handguns, he has obtained identifiable latent prints on about 6 to 7 percent of them. These experts explain that there are several reasons for this low percentage, including: i) firearms are often manufactured with rough or matte surfaces, which are not conducive to retention or development of fingerprints; ii) guns are often held with a lot of pressure which leads to smearing of prints; and iii) guns are also often carried in such a manner, that is, shoved in waistbands or in pockets, so that prints are wiped off or smeared. Additionally, weather conditions and a gun handler's perspiration levels also can affect the deposition of latent identifiable prints as can the gun's handling upon recovery.

Detective Sethman is expected to testify that the particular gun seized in this case, a Smith and Wesson revolver, provides fewer smooth surfaces to receive a print as compared to other types of handguns, for example, a semi-automatic. Detective Sethman will also testify that the grip had been bound with electrical tape,

which was removed and processed separately.  He said that although electrical tape is a smooth surface and receptive for latent prints, it also is a slippery surface and that, therefore, the hand can slide on the tape resulting in smudges or smeared prints. Detective Sethman would say he was surprised that an identifiable latent print was recovered from the grip, under where the tape had been, because in his experience, the adhesive of the tape generally pulls the print off.  He also would testify that he could not determine how long the print had been there.

When presented with a hypothetical of two people struggling over control of a gun, the government anticipates that both experts would testify that they would not necessarily expect to be able to obtain an identifiable print in those circumstances.  Although two people are touching the firearm, the pressure being exerted in the struggle over the firearm, and the movement of the hands over the firearm,  might cause any prints to be smeared and not be suitable for comparison.

**II.  Drug Analysis**
**Annie Khan Dookhan, Chemist II**
**Massachusetts Department of Public Health**

Ms. Dookhan will testify that she performed an analysis of the substance in one of three plastic bags provided to her by Boston Police in connection with this case.[3]  She will testify that she

---

[3] Three plastic bags containing marijuana were seized in connection with the defendant's arrest in this case: one bag from his pants pocket at the scene of his arrest and two more, believed

first performed a visual inspection and determined that it was green, leafy vegetable matter. The substance was then examined under a microscope for the presence of cystolith and glandular hairs. Finally, a chemical test was performed which resulted in a color change, confirming that the substance being examined was indeed marijuana. A copy of Ms. Dookhan's curriculum vitae is attached at Tab A.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Sandra S. Bower
SANDRA S. BOWER
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3184

---

to have fallen from the defendant's pants, when he was being treated at Caritas Carney Hospital. Although the defendant is not charged with any drug offenses in the instant case, the government anticipates that there will be testimony from one or more of the police officers about their observations of marijuana shavings and the detection of an odor of marijuana in the vehicle the defendant was riding in, as well as statements from the defendant as he was getting out of the vehicle that he had "weed" on him. The government anticipates that the officers will testify that the defendant claimed to be getting the marijuana when he reached for his waist area and pulled the firearm.

The United States has not made a final determination as to whether the chemist will be called to confirm that the plastic bags seized from the defendant did indeed contain marijuana, but the summary of the chemist's testimony and her qualifications are nevertheless provided here. Defense counsel was provided with a copy of the drug certification prior to the defendant's arraignment in this case. Another copy is attached at Tab A.

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 14, 2006.

                                      <u>/s/ Sandra S. Bower</u>
                                      Assistant U.S. Attorney



# The Commonwealth of Massachusetts
Executive Office of Health and Human Services
Department of Public Health
State Laboratory Institute, 305 South Street
Boston, MA 02130
617-983-6622

Mitt Romney
Governor

Kerry Healey, Lt. Governor

Ronald Preston, Secretary

Paul J. Cote Jr.
Commissioner

DATE RECEIVED: 05/24/2005
DATE ANALYZED: 06/08/2005

NO. 746852
I hereby certify that the vegetable matter
Contained in 3 plastic bags            MARKED: 746852
Submitted by P.O. WM. DONNELLY of the BOSTON POLICE DEPARTMENT

Has been examined with the following results:
The vegetable matter was found to contain:
Marijuana, as defined in Chapter 94 C, Controlled Substance Act,
Section 31, Class D.

3 similar items were received and 1 was randomly selected
and analyzed.

DEFENDANT: COMBS-QUARLES, ANTOINE

ASSISTANT ANALYST  Annie Dookhan

On this 9th day of June 2005, before me, the undersigned notary public, personally appeared the above signed subscriber(s), having proved to me through Department of Public Health documentation to be the person(s) whose name(s) is/are signed on this certificate and to be (an) assistant analyst(s) of the Department of Public Health, and who swore to me that the contents of this document are truthful and accurate to the best of his/her/their knowledge and belief.



Elisabeth L. O'Brien
Notary Public
Commonwealth of Massachusetts
My commission expires on
November 24, 2011

Elisabeth L. O'Brien, NOTARY PUBLIC
My commission expires on November 24, 2011

Chapter 111, Section 13 of the General Laws
This certificate shall be sworn to before a Justice of the Peace or Notary Public, and the jurat shall contain a statement that the subscriber is the analyst or assistant analyst of the department. When properly executed, it shall be prima facie evidence of the composition, quality, and the net weight of the narcotic or other drug, poison, medicine, or chemical analyzed, and the court shall take judicial notice of the signature of the analyst or assistant analyst, and of the fact that he/she is such.

## Curriculum Vitae

**Annie Khan (Dookhan)**

**Education:**
University of Massachusetts, Boston, Ma., Master of Science in Chemistry, (present)
University of Massachusetts, Boston, Ma., Bachelor of Science in Biochemistry, 2001

**Experience:**
2003 – present
Chemist II, Massachusetts Department of Public Health, Drug Analysis Laboratory

*Completed six-week training course conducted by senior staff within the Department of Public Health, Drug Analysis Laboratory.
*Appointed Assistant Analyst by Assistant Commissioner of Public Health, January 2004.
*Responsible for the identification of drugs to determine violations of harmful and narcotic drug laws.
*Trained in the use of complex analytical instrumentation, microscopes and balances for the purpose of drug analysis.
*Quality Control (QC) and routine maintenance of GC instrument.

2001 – 2003
QC Analyst II, UMMS-Massachusetts Biologic Laboratory, QC Material Control

*Completed proficiency training conducted by a member of the staff within the Massachusetts Biologic Laboratory, Quality Control and Quality Assurance Department.
*Routine QC testing of products for the FDA.
*Trained in the use of complex analytical instrumentation, and balances for the purpose of QC analysis for product and validation projects.
*Writing, revising and reviewing Standard Operating Procedures (SOPs).
*Calibration, preventive maintenance, QC and QA of analytical instrumentation.
*Complete testing of chemicals for Vendor Validation Project for the FDA.
*Method Development for creating new techniques for the QC Department.
*Compendial testing and interpretation of the USP, ACS, FCC, AOAC, Merck Index, PDR, etc.

**Additional Training:**
GLP/GMP course with Massachusetts Biologic Laboratory.
QC/QA training according to FDA Codes and Regulations.
GC course with Agilent Technologies and Restek.
HPLC course with Waters Cooperation.
FTIR course with Spectros.
TOC training with Massachusetts Biologic Laboratory and Sievers.

**Association:**
American Chemical Society (ACS)