UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____<br>)<br>)<br>**UNITED STATES**           )<br>)<br>    v.                    )<br>)<br>**ANTOIN COMBS QUARLES**    )<br>)<br>_____) | CR. NO.: 05-10237-MLW |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANTOIN COMBS QUARLES' MOTION *IN LIMINE* TO EXCLUDE FINGERPRINT TESTIMONY OR, ALTERNATIVELY, FOR A *DAUBERT* HEARING**
_____

## I.     INTRODUCTION.

To rebut the fact that there were no latent identifiable prints on the firearm at issue in this case and, more importantly, the fact that defendant Antoin Combs Quarles' fingerprints were not on said firearm, the government intends to offer in its case-in-chief testimony from Detective Timothy Sethman that in his experience, firearms do not yield a significant percentage of latent identifiable prints.  Indeed, Detective Sethman is prepared to testify to a myriad of general reasons why the defendant's fingerprints might not be on the weapon at issue in this case.  In addition, the government intends to solicit an opinion from Detective Sethman, based on a hypothetical question, that when two people are struggling over control of a gun, he would not necessarily expect to obtain an identifiable print.  Because this purported expert testimony does not satisfy the requirements of Fed. R. Evid. 702, defendant submits that this evidence should be excluded, or alternatively, the Court should conduct a *Daubert* hearing to determine its admissibility.

## II.     **ARGUMENT**.

A.     EXPERT TESTIMONY IS NOT ADMISSIBLE UNLESS THE PROPONENT OF THE TESTIMONY ESTABLISHES THAT THE TESTIMONY IS BOTH RELIABLE AND RELEVANT.

A trial judge "faced with a proffer of expert scientific testimony, […] must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to 1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrill Dow Pharmaceuticals* (Daubert), 509 U.S. 579, 592, 113 S.Ct. 2786, 2796 (1993).  A court performing this inquiry must make a preliminary assessment of, first, "whether the reasoning or methodology underlying the testimony is scientifically valid" and second, "whether that reasoning or methodology properly can be applied to the facts in issue."  *Id.*

Indeed, before proffered expert testimony may be admitted, the trial judge must "ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Id.* at 597.  The trial judge's gate-keeping obligation to ensure that any and all expert testimony "is not only relevant, but reliable" applies to "all expert testimony," regardless of whether the expert testifies or purports to testify on the basis of scientific, technical or other specialized knowledge.  *Kuhmo Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 1174 (1999) *quoting Daubert*, 509 U.S. at 589, 113 S.Ct. at 2786.

The Court's vigilant exercise of this gatekeeper role is critical because the latitude given to expert witnesses to express their opinions on matters about which they have no firsthand knowledge and because an expert's testimony may be given greater weight by the jury due to the expert's background and approach.  *Daubert, supra* at 595; *United States v. Hines*, 55 F. Supp. 2d 62, 64 (D. Mass. 1999)(noting that "a certain patina attaches to an expert's testimony unlike

any other witness: this is 'science,' a professional's judgment, the jury may think, and give more credence to the testimony than it may deserve.").

    1.   <u>Burden of Proof</u>.

  The burden is on the proponent of expert testimony to establish a *prima facie* case that the evidence satisfies the requirements of Rule 702. *Daubert v. Merrill Dow Pharmaceuticals,* 43 F.3d 1311, 1319 n. 10 (9th Cir. 1995). To make such a showing, the expert must explain the methodology used to reach the relevant conclusions and point to external sources to validate that methodology. *Id*. at 1319. Where the court is presented with "only the experts' qualifications, their conclusion and their assurances of reliability … [u]nder *Daubert* that is not enough. *Id.* Once the proponent of the expert testimony makes a *prima facie* that the testimony meets the requirements of Rule 702, the opposing party is then entitled to challenge that showing. Where the opposing party raises a material dispute as to the admissibility of expert scientific evidence, the court will hold an in limine, so-called "*Daubert* Hearing", to consider the methodology employed by the scientific experts. Id. at Note 10. However, the ultimate burden to establish the proffered testimony meets the requirements of Rule 702, rests with the proponent of the evidence. *See* Fed. R. Evid. 104(a) and 702.

    2.   <u>Reliability</u>.

  In determining the reliability of proffered expert testimony, the focus is on principles and methodology, not on the conclusions they generate. *Daubert*, 509 U.S. at 595. "Proposed testimony must be supported by appropriate validation, i.e., 'good grounds' based on what is known." *Id*. at 590. The reliability inquiry is a flexible one, with substantial discretion left to the trial judge to determine how to evaluate the reliability of a particular expert's testimony. *Kumho, supra* at 141. The *Daubert* Court identified five non-exclusive factors to be considered in

evaluating reliability: (1) whether the theory or technique can be and has been tested, (2) whether the theory or technique has been subject to peer review and publication; (3) whether a particular scientific technique has a known or potential rate of error; (4) whether standards controlling the technique's operation exists and are maintained; and (5) whether the technique is generally accepted in the relevant scientific community. *Daubert, supra* at 593-94. However, *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. *Kuhmo, supra* at 141. Indeed, factors listed in Daubert will not always be applicable or instructive. Similarly, additional factors not specified in Daubert may be appropriately considered when necessary.

In sum, the Court must ensure "that in each step, from initial premise to ultimate conclusion, the expert faithfully followed valid scientific methodology. Accordingly, the Court need not accept as scientifically reliable any conclusion that "good science does not permit to be drawn from the underlying data but which instead constitutes 'unsupported speculation.'" *Hall v. Baxter Healthcare Corp.*, 947 F.Supp. 1387, 1401 (D. Or. 1996). In short, "[a] court may conclude that there is simple too great an analytical gap between the data and the opinion proffered. *General Electric Co. v. Joyner*, 522 U.S. 136, 146, 118 S.Ct. 512, 519 (1997).

    3.    <u>Relevance</u>.

Expert testimony should be excluded where it is irrelevant to the issues in the case. *Daubert, supra* at 591-92 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful"). "[A] valid scientific connection to the pertinent inquiry [is] a precondition of admissibility." *Id.* The relevance inquiry is an important one because "scientific expert testimony carries special dangers to the fact-finding process because it 'can be both powerful and quite misleading because of the difficulty in evaluating it. *Daubert, supra* 43 F.3d

at 1321, n. 17 (*quoting Daubert*, *supra* at 509 U.S. 595). "Federal judges must therefore exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case and that it will not mislead the jury." *Id.* The relevance inquiry is also referred to as the "fit" inquiry. *Daubert, supra* at 591.

>B.  THE PROFFERED EXPERT TESTIMONY SHOULD BE EXCLUDED BECAUSE IT DOES NOT MEET THE ADMISSIBILITY REQUIREMENTS OF *DAUBERT* AND RULE 702.
>
>>1.  The Government Has Failed To Make A *Prima Facie* Showing That The Proffered Evidence Meets The Requirements Of Rule 702.

The government has failed to make even a *prima facie* showing that the proffered expert testimony meets the requirements of Fed. R. Evid. 702. Indeed, a careful reading of Detective Sethman's purported testimony indicates that his opinion is based on an estimate of an estimate. Specifically, he estimates that from his experience examining in excess of 300 handguns, he has only obtained identifiable latent prints on about 6 or 7 percent. So, of his estimated 300 examinations, he further estimates that he obtained identifiable prints approximately 6 or 7 percent of the time. Given this small sample, it is impossible to know whether the opinion offered is misleading because Detective Sethman does not indicate when his small percentage of success is consistent with the experience of other fingerprint examiners.

The government's disclosure has provided nothing more than Detective Sethman's bald assertions that based on his limited experience, identifiable prints can only be obtained from handguns 6 or 7 percent of the time. Indeed, the government's disclosure neither explains the methodology Detective Sethman followed to reach his conclusion nor provides any external source to validate the methodology he used. *Daubert, supra* 43 F.3d at 1319.

In other words, the government's disclosure only contains the expert's qualifications, his conclusions and his assertions of reliability. Under *Daubert*, that is not enough. *Id.* Indeed, the

5

government's disclosure does not even comply with Fed. R. Crim. P. 16(a)(1)(G)'s requirement that the witness's opinion and "the bases and reasons for those opinions" be included in the written summary of any testimony the government intends to use under Rule 702.

Because the government has failed to meet its *prima facie* burden, the defendant has no obligation to present evidence that the government's expert employed unsound methodology. Rather, the proposed expert testimony can be excluded on this basis alone.

      2.     <u>The Government Has Failed To Demonstrate That The Proffered Evidence Is Reliable</u>.

The government's disclosure further states that Detective Sethman is expected to testify that there are a myriad of reasons why this low percentage occurs, including, how firearms are manufactured; the amount of "pressure" used to hold firearms; the way firearms are "carried"; weather conditions; the gun handling upon recovery; and my favorite, the gun handler's "perspiration levels."

However, while mentioning these various reasons, he does not explain how many of the 300 handguns he has examined did not have latent prints for the reasons listed. Nor does he explain how much pressure has to be applied to a firearm or how much a gun handler has to perspire to destroy a latent print.

In addition, Detective Sethman does not indicate whether the reasons listed are an exhaustive list or whether other grounds may exist. Interestingly, Detective Sethman does not list as a reason for the low percentage the "manner" in which a handgun is analyzed. But, clearly, there must be some occasions where latent prints are destroyed or compromised due to the examiner error. Nevertheless, Detective Sethman does not list examiner error as a reason for the low percentage of latent prints.

Moreover, Detective Sethman also expects to testify that the particular gun allegedly seized in this case, a Smith and Wesson revolver, provides fewer smooth surfaces to receive a print. However, he will also testify that the grip of the gun allegedly recovered from the defendant was wrapped with electrical tape, or a smooth surface. In its disclosure, the government does not indicate how many of the 300 guns Detective Sethman has examined were Smith and Wesson revolvers. Nor does the government indicate how many Smith and Wesson revolvers were wrapped with electrical tape. Nevertheless, Detective Sethman expects to testify that the gun allegedly seized in this case provided fewer smooth surfaces to receive a print.

Detective Sethman is also expected to offer an opinion based on a hypothetical question that assumes that two people are struggling over control of a gun. According to the government's disclosure, Detective Sethman is expected to testify that if two people are struggling over a gun, he would not necessarily expect to be able to obtain an identifiable print.

The major problem with Detective Sethman's proposed testimony is that it is not supported by appropriate validation, i.e., 'good grounds' based on what is known." *Id*. at 590. Indeed, the *Daubert* Court identified five non-exclusive factors to be considered in evaluating reliability: (1) whether the theory or technique can be and has been tested, (2) whether the theory or technique has been subject to peer review and publication; (3) whether a particular scientific technique has a known or potential rate of error; (4) whether standards controlling the technique's operation exists and are maintained; and (5) whether the technique is generally accepted in the relevant scientific community. The government's disclosure does not speak to any of these significant requirements.

For example, what level of "pressure" must be used to hold a handgun to eliminate the lifting of a latent print? Similarly, what type of weather conditions are necessary to eliminate or

compromise a print?  What perspiration level must be achieved by a gun's handler to compromise or smudge a print?  More importantly, is there a general consensus in the fingerprint industry regarding the amount of pressure, the level of perspiration or the type of weather that will eliminate or compromise a latent fingerprint.  Because the government's disclosure does not contain this material information, the Court cannot determine the reliability of Detective Sethman's purported testimony.  Accordingly, the proposed testimony can be excluded on this ground as well.

        3.       The Government Has Failed To Establish That The Proffered Evidence Is Relevant.

Expert testimony should be excluded where it is irrelevant to the issues in the case.  *Daubert, supra* at 591-92.  "[A] valid scientific connection to the pertinent inquiry [is] a precondition of admissibility."  *Id.*  "Federal judges must therefore exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case and that it will not mislead the jury."  *Id.*

While it is understandable that the government wants to explain the reason why the defendant's fingerprints are not on the firearm he allegedly possessed, a careful examination of Detective Sethman's alleged expert opinion indicates that his opinion does not "fit" the facts of this case.  Specifically, according to the government's disclosure, if presented with a hypothetical question, Detective Sethman is prepared to testify that two people struggling over control of a gun "might cause any prints to be smeared and not be suitable for comparison."  The problem with this conclusion is that it assumes that there was a print on the firearm that was "smeared" and "not suitable for comparison."  However, in this case, there were no prints on the handgun, smeared or otherwise.

In this case, before the black electrical tape was removed from the handle of the handgun, the gun was visually examined and "no latent prints of value were developed." Indeed, Detective Sethman's latent print processing worksheet makes no mention of observing any latent print before he removed the black electrical tape. Accordingly, his opinion that a struggle might cause a print to be smeared does not "fit" the facts of this case and should not be admitted.

Finally, even if the Court were to conclude that Detective's Sethman's opinion is relevant, defendant submits that the limited probative value of the evidence is substantially outweighed by the danger of unfair prejudice and by misleading the jury into believing that this expert, with no firsthand knowledge of the events of May 23, 2005, believes that the defendant was in possession of the firearm at issue even though defendant's fingerprints were not found on the weapon.

## II.    CONCLUSION.

For all the foregoing reasons, defendant respectfully submits that the purported testimony of Detective Sethman that firearms do not yield a significant percentage of latent identifiable prints should be excluded because it does not satisfy the requirements of Fed. R. Evid. 702 or 403, or alternatively, the Court should conduct a *Daubert* hearing to determine its admissibility.

>
> Respectfully submitted,
> By defendant
> Antoin Combs Quarles
> By his attorney,
>
>   /s/ Scott P. Lopez
> Scott P. Lopez, BBO #549556
> Law Office of Scott P. Lopez
> 24 School Street, 8th Floor
> Boston, MA  02108
> (617) 742-5700

Dated:  March 20, 2006

CERTIFICATE OF SERVICE

    I, Scott P. Lopez, hereby certify that on the 20th day of March, 2006, I served the within MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANTOIN COMBS QUARLES' MOTION *IN LIMINE* TO EXCLUDE FINGERPRINT TESTIMONY OR, ALTERNATIVELY, FOR A *DAUBERT* HEARING by electronic mail on the following counsel of record at the following address:

Sandra S. Bower
Assistant United States Attorney
United States Attorney Office
One Courthouse Way, Suite 9200
Boston, MA  02210
617-748-3184
Sandra.Bower@usdoj.gov

    /s/ Scott P. Lopez
Scott P. Lopez