**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**UNITED STATES OF AMERICA )**
**)**
**)**
**v. ) CRIM. NO. 05-10237-MLW**
**)**
**ANTOIN QUARLES COMBS )**

**GOVERNMENT'S OPPOSITION TO MOTION TO EXCLUDE "UNFAIRLY PREJUDICIAL REFERENCES"**

The government is in receipt of the defendant's motion to exclude from evidence any reference to what he considers to be "unfairly prejudicial references." Specifically, the defendant asserts--without a single authority or supporting citation--that any reference to: (i) the fact that the area of Southern Avenue has been the scene of various drug and firearm arrests, (ii)that BPD Officers Bickerton and Conway have responded to shootings in the area; (iii) that the actions of the passenger in the Mercury Mountaineer (later identified to be the defendant) in going into and quickly leaving a building in the area of 50 Southern Avenue at approximately 2:15 A.M. was consistent with a drug transaction; and (iv) that the police officers were "victims" in this matter should all be stricken from the record.

As is indicated below, the defendant has misapprehended what the government intends to introduce in this case. While certain background information about who the police officers are and what their duties involved on May 23, 2005 is of course required to explain the case to the jury, the government does not intend to

introduce evidence about shootings in the area of Southern Avenue or to portray the police office in this case as victims. As is explained more fully below, what the government does intend to do is to provide basic contextual evidence for how this incident began and to explain the actions that the officers took.

In responding to this motion generally, the government also notes that the credibility of the police witnesses in this case will of course be at issue.  And not just in the sense of whether they are accurately testifying about the events of May 23, 2005. The defendant in this and other cases like it, will invariably attempt to criticize the officer's procedures and the specific way that they did their job.  Here, of course, this means their decision to follow the Mountaineer after it pulled away from the area of 50 Southern Street and to stop the car and ultimately order the occupants to exit after the officers determined that the car was not insured and after the officers saw and smelled what they believed to be marijuana in (or coming from) the car. Unless the jury understands why the officers did what they did, the will be unable to assess the reasonableness of their behavior and thus their credibility.

With these general principles in mind, the government responds to the particulars of the defendant's motion as follows:

1.  <u>That the area of Southern Avenue has been plagued with numerous drug and firearm arrests</u>.  The government does not intend to phrase any evidence in the manner chosen by the

defendant. The government does intend, however, to ask the officers what they were doing in the area of 50 Southern Area at 2:15 A.M on May 23, 2005 when the Mercury Mountaineer pulled up. The government expects that the officers will state that they believed this was an area in which there had been drug activity and that is why they were parked and watching it. This basic statement is relevant to explain the context for what followed and is surely relevant to permit the jury to understand the events that followed. See United States v. Benefield, 942 F.2d 60 (1st Cir. 1991)(testimony that police officers were patrolling in area of numerous recent robberies properly admitted to explain reason for being in area and heightened awareness at time of crime at issue); United States v. Cruz, 352 F.3d 499, 506 (1st Cir. 2003)(testimony by police officer regarding drug activity in area admissible to, among other things, explain police presence at scene).

2. That Officer's Bickerton and Conway have responded to reports of shootings in the area. Although this fact is certainly true and would be a relevant suppression issue, the government does not presently expect to ask the officers about it and will instruct them to make no reference to the prevalence of shootings in the area.

3. That defendant entering and exiting quickly from a building in the are of 50 Southern Avenue was consistent with a drug transaction. The government expects to ask Officers

Bickerton and Conway whether the observations they made of the passenger of the Mountaineer (going into and then quickly leaving a building in the area of 50 Southern Avenue at 2:15 A.M.) was significant to them.  The government expects these witnesses will say that they considered the actions of this person (later identified as the defendant) to be consistent with a drug transaction and that this was a factor in their decision to follow the car.

This testimony is admissible because it is what happened and because of the importance of credibility issues in this case.  As the government has already advised the court, the defendant has indicated that he will argue that the police planted the firearm on him as a result of some sort of nefarious (but as of yet undefined scheme of police misconduct) to implicate the defendant in criminal activity.  The First Circuit has held that where the basis and motivation for police activity is at issue, the government is entitled to explain who the police were and why they did what they did.  United States v. Liranzo, 385 F.3d 66, 71 (1st Cir. 2004) (affirming admission of testimony that officers were assigned to the North shore gang unit and other testimony describing the manner in which they made a car stop where defendant attacked police procedures). The issue here is not whether the defendant went to Southern Avenue to purchase drugs but rather simply explaining the actions the officers took and its reasonableness in the circumstances.

Moreover, any prejudice that could possibly result from this reference is dispelled by the fact that the defendant both admitted that he had marijuana on him when stopped and that marijuana was seized from him.  See FRE 403 (relevant evidence may be excluded  if its "probative value is *substantially* outweighed by the danger of *unfair prejudice*").  In the circumstances, the evidence at issue simply cannot rise to the level of unfair prejudice.  United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir.2000) (Evidence is unfairly prejudicial if it "invites the jury to render a verdict on an improper emotional basis"); United States v. Currier, 836 F.2d 11, 18 (1st Cir.1987) ("Unfairly prejudicial evidence ... is evidence that triggers the mainsprings of human action in such a way as to cause a jury to base its decision on something other than the established proposition in the case").

Once again, the evidence here is relevant to show what happened in this case and also to allow the jury to assess the surrounding circumstances and the overall credibility of the officers.  The fact that the defendant had marijuana and that the smell of marijuana was coming from the car is also relevant in understanding the manner of the defendant's reaction to the police and the violence he employed once the officers saw the gun in his waistband.

   4.   That the police were "victims".  The government does not intend to describe the police officers as "victims."  What the

government does intend to do is to establish that both Officers Bickerton and Conway suffered injury in this case (including Officer's bickerton's bleeding fingernails from gripping the gun being held by the defendant so hard). This testimony corroborates the expected testimony of the officers about the intensity of their struggle with the defendant to subdue him and wrest control of the firearm away from him.

_____Based on the foregoing, the government requests that the motion in Limine be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ John A. Wortmann, Jr._
JOHN A. WORTMANN, JR.
SANDRA BOWER
Assistant U.S. Attorneys
One Courthouse Way
Boston, MA 02210
(617)748-3207