UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA**

v.                              Crim. No. 05-10237-MLW

**ANTOIN QUARLES COMBS**

_____

**UNITED STATES' SUPPLEMENTAL OPPOSITION TO
DEFENDANT'S MOTION TO LIMIT FINGERPRINT TESTIMONY**

The defendant has requested that the Court preclude the government from being allowed to elicit testimony from fingerprint examiner Timothy Sethman that it is relatively rare to recover identifiable latent prints on firearms and that in his in his own experience examining an estimated 300 firearms during the course of his career, he has recovered identifiable latent prints only about 6 percent of the time.  The defendant, who is calling the expert to testify, moved the Court to order the government to produce all of the expert's reports in connection with these 300 cases.

The undersigned spoke with Detective Sethman today and advises the Court that it would be extremely difficult, if not impossible, for Detective Sethman to be able to produce for trial all of the reports from his nine-year career as a forensic detective in which he examined a firearm for fingerprints. Detective Sethman advises that the reports are filed with each case, and not kept in a central repository, and that it would require him to physically pull and examine each file to determine

whether the evidence analyzed involved a gun.  Files on site in Westmoreland County, Pennsylvania, where Sethman works, number about 1,000, Sethman said. The rest of the files are in storage.

That said, it is the government's position that the Court can, and should, permit Sethman's challenged testimony without requiring the production of these reports and can do so consistently with Fed.R.Evid. 703 and 705. United States v. Fosher, 590 F.2d 381, 382 (1st Cir.1979)("[T]he propriety of receiving expert testimony rests within the sound discretion of the trial court."); see also United States v. Hensel,699 F.2d 18, 39 (1st Cir. 1983)(district court properly denied defense expert discovery request because, in part, of the timing of the request and the burden it would impose upon the government).

Detective Sethman has been a fingerprint examiner for nine years, has received hundreds of hours of training in crime scene processing and latent print analysis, and has personally examined more than 300 handguns for prints.  His opinion about the rarity of the recovery of prints from firearms is based both on firsthand knowledge as well as his extensive training, bases which may be thoroughly explored in a proffer prior to him taking the stand.  The underlying "fact" which supports his testimony is, in part, the fact of his first-hand examination of some 300 firearms and not each report itself.  Defense counsel can certainly question Detective Sethman as to how many of the

firearms had electrical tape, how many were Smith and Wesson, and the like, in an effort to test the expert's testimony.

Requiring the expert to produce each report made over the course of a lengthy career as the underlying facts supporting his/her opinion would effectively cripple the ability of any party to use expert testimony.  That is, any time a doctor testifies as to a medical opinion, the doctor could then be required to produce each exam the doctor ever made in which that condition was diagnosed.  A law enforcement officer who testifies that, in his training and experience, a certain piece of paper seized in evidence appears to be a "drug ledger" could then be required to produce every report -in cases unrelated to the case at bar-in which a drug ledger was obtained.  The undersigned, in the limited time available, was unable to locate any reported decision requiring such voluminous disclosures.  It is inconsistent with the purposes of the expert evidentiary provisions which are to assist the jury in understanding a matter about which they may not have particularized knowledge. Fed.R.Evid. 702, Advisory Committee Notes, 1972 Proposed Rules ("An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge.")

Further, the defendant is himself offering this witness as an expert--someone with sufficient skill, training, and

knowledge to testify concerning fingerprint examination-- and offering his testimony as to the examination and comparison he did in this case. The defendant should not be then allowed to complain that this witness' same qualifying experience is deficient.

Finally, Detective Sethman's opinion that it is difficult to recover identifiable latent prints from firearms is not novel; it has been reported in the literature and accepted in numerous federal and state cases. See e.g., United States v. Burdeau, 168 F.3d. 352, 356-57 (9th Cir. 1999)("identifiable fingerprints are almost never found on guns and only rarely found on other objects submitted for testing"); United States v. Carpenter, 403 F.3d 9, 10 n.1 (1st Cir. 2005)("the government adduced expert testimony that it is exceedingly difficult to lift viable fingerprints from the surfaces of this particular weapon."); United States v. Coffee, 434 F.3d 887, 897 (6th Cir. 2006)(noting testimony of the government's expert witness that because "fingerprints are rarely identified on firearms, the absence of fingerprints does not mean that an item has not been touched, and mechanics' cracked and gouged hands (defendant was a mechanic) are less likely than those of members of other professions to leave fingerprints."); United States v. Castillo, 406 F.3d 806, 810 (7th Cir. 2005)(government expert testified that "guns and ammunition are not very receptive surfaces for leaving fingerprints"); United

4

States v. Williams, 358 F.3d 956, 960 (D.C. Cir. 2004)(government introduced expert testimony that "it was difficult to recover a useful fingerprint from a gun and that the absence of any fingerprints on the gun recovered ...was not unusual."); Commonwealth v. Evans, 786 N.E.2d 375, 391 (Mass. 2003)(state's fingerprint expert testified that guns yield identifiable fingerprints in only about two percent of cases.); United States v. Almaraz, 31 Fed.Appx. 838, n.1 (5th Cir. 2002)(unpublished)(fingerprint expert testified that prints on gun and its container were too "smudge or blurred" to be suitable for comparison and that this was "in no way unusual."); cf., United States v. Paladino, 401 F.3d 471, 477 (7th Cir. 2005)(holding that rarity of finding identifiable fingerprints on firearms was irrelevant, but nonetheless recognizing that it is indeed rare)(quoting Clive A. Barnum & Darrell R. Klasey, Factors Affecting the Recovery of Latent Prints on Firearms, The Prosecutor, Jan./Feb. 1998, at 32.)

   Detective Sethman's opinions are supported by his own experience, by his training, and, as the literature and caselaw suggest, the experience and training of others.  To now impose

the onerous burden of producing the report of each firearm examination he has made is unnecessary and unwarranted.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney


                         By:  /s/ Sandra S. Bower
                              SANDRA S. BOWER
                              JOHN A. WORTMANN, Jr.
                              Assistant United States Attorneys
                              1 Courthouse Way, Suite 9200
                              Boston, MA 02210
                              (617) 748-3184


### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 28, 2006.

                              /s/ Sandra S. Bower
                              SANDRA S. BOWER
                              Assistant U.S. Attorney