UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                         )
         v.              )    Criminal No. 05-10237-MLW
                         )
ANTOIN QUARLES COMBS     )
                         )

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR FOR NEW TRIAL**

Defendant Antoin Quarles Combs has filed a motion for a judgment of acquittal arguing that the government failed to prove that the firearm traveled in interstate commerce or that the alleged possession of the firearm and ammunition "affected" interstate commerce.  He also contends that, in the alternative, he should be granted a new trial because the verdict is against the weight of the evidence.  For the reasons discussed below, the government urges the court to deny the defendant's motion.

Judgment of Acquittal

"[T]he standard of review for a judgment of acquittal notwithstanding the verdict is identical to the test employed to measure the sufficiency of the evidence supporting a guilty verdict.  The test is whether, considering the evidence as a whole, taken in the light most favorable to the government, together with all legitimate inferences that can be drawn from such evidence, a rational trier of fact could have found guilt beyond a reasonable doubt." *United States v. McNatt*, 813 F.2d

499, 502 (1st Cir. 1987); *United States v. Brennan*, 994 F.2d 918, 922 (1st Cir. 1993); *United States v. St. Michael's Credit Union*, 880 F.2d 579, 584 (1st Cir. 1989). Any issue of credibility must be resolved in favor of the jury's verdict. *McNatt*, 813 F.2d at 502, citing *United States v. Winter,* 663 F.2d 1120, 1127 (1st Cir. 1981). Deference must be given to the verdict if the evidence supports different interpretations. *McNatt,* 813 F.2d at 502, citing *United States v. Rivera-Sola*, 713 F.2d 866, 869 (1st Cir. 1983). "In other words, the prosecutor need only produce that quantum of evidence by which a reasonable trier of fact *could* find guilt beyond a reasonable doubt; there is no requirement to produce evidence that would *compel* a finding of guilt beyond a reasonable doubt." *McNatt,* 813 F.2d at 502. (emphasis in original).

    Here, the defendant asserts that the government failed to prove that the Smith & Wesson firearm traveled in interstate commerce prior to its seizure from the defendant in Dorchester, Massachusetts, on May 23, 2005. On this point, the government presented the testimony of Ronald Borgio of Smith & Wesson who explained the shipping records associated with the gun seized in this case and which were admitted into evidence as Exhibit 9. Borgio explained that one page of the two-page document was the shipping order from John Jovino, Inc. of New York, which reflected that John Jovino had ordered a number of different

models of guns from Smith & Wesson, including two of a particular type of Model 36, .38 caliber "Chiefs Special" with a 2-inch nickel barrel. The second page of the document-prepared in the shipping department-listed the particular guns, by serial number, which were used to fill the order for John Jovino. This packing list showed that one of the guns filling the order bore serial number J517421, the serial number on the gun seized in this case. Borgio also examined Exhibit 1, the gun seized from the defendant, identified it as the same model ordered by John Jovino, and further identified its serial number as J517421. The records were stamped with the date of January 28, 1977, which, Borgio testified, indicated that the guns had been shipped to John Jovino in New York on or about that date. Based on this evidence alone, the jury could rationally conclude that in January 1977, Smith & Wesson shipped the gun seized in this case to John Jovino in New York and that the interstate commerce element of the offense was satisfied.

But the government also introduced Exhibit 10A, a record identified as produced by John Jovino, Inc., which also listed a Model 36, .38 caliber gun bearing serial number J517421. The government read the column headings, and the entries in each column, appearing to the right of this serial number. Examining this document in the light most favorable to the government and drawing all legitimate inferences from it, the jury could

rationally conclude that John Jovino received this gun from Smith & Wesson, the only "name" on the record and then sold it to "Bob's Spts," a Massachusetts "dealer" on or about February 8, 1977.

In any event, and as conceded by the defendant, because the five live rounds of .38 caliber ammunition (Exhibit 2) were manufactured outside of Massachusetts[1] and therefore, traveled in interstate commerce prior to their seizure on May 23, 2005, the defendant's motion for judgment of acquittal must fail unless the Court accepts the defendant's position that travel in interstate commerce at some time prior to the possession is insufficient to show that the defendant's possession of the firearm or ammunition "affect[ed] interstate commerce."[2]  As further noted by the

---

[1]  ATF Special Agent Philip Ball testified that there are no ammunition manufacturers in Massachusetts and further, that the particular ammunition in this case was made by Remington-Peters in either Connecticut or Arizona.

[2]  The jury was instructed that the government need not prove that the defendant possessed both the firearm and ammunition and that its verdict could be based on unanimous agreement that he possessed either one, as long as all of the other elements of the crime had been satisfied.  The jury is presumed to follow the court's instructions on the law.  *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process."); *United States v. Freeman*, 208 F.3d 332, 344 (1st Cir. 2000); *United States v. Colon-Munoz*, 192 F.3d 210, 230 (1st Cir. 1999).  Where, as here, the single count of the indictment charges the commission of more
(continued...)

defendant, that precise argument has been squarely rejected by the First Circuit. *United States v. Wilkerson*, 411 F.3d 1, 9-10 (2005)("the nexus to interstate commerce is established if the firearm 'has traveled at some time in interstate commerce.'"); *United States v. Weems*, 322 F.3d 18, 24 (1st Cir. 2003)(no requirement that felon transport the firearm in interstate commerce).

A rational jury could conclude that the evidence in this case established beyond a reasonable doubt that the firearm traveled in interstate commerce.  Moreover, they could also conclude beyond a reasonable doubt that the defendant possessed ammunition which also had traveled in interstate commerce.  The verdict should stand.

## New Trial

In the alternative, the defendant asserts he should be granted a new trial because the verdict is contrary to the weight of the evidence.  The Court's authority to order a new trial in these circumstances is extremely limited.  "The remedy [of ordering a new trial based on the weight of the evidence] is sparingly used, the courts usually couching their decisions in

---

[2] (...continued)
than one unlawful object, a general guilty verdict may stand as long as the evidence is sufficient to convict as to one of the objects. *Griffin v. United States*, 502 U.S. 46 (1991).

terms of 'exceptional cases,' 'miscarriage of justice,' and where 'the evidence preponderates heavily against the verdict.'" *United States v. Leach*, 427 F.2d 1107, 1111 (1st Cir. 1970)(citations omitted).

This is not such a case.  Two Boston police officers, John Conway and Dean Bickerton, testified that they saw the gun in the defendant's waistband, that the defendant pulled the gun out and pointed it in their direction, and that they then struggled with him over the gun.  As they struggled, the defendant yelled, "I'm going to shoot you mother f--kers.  You all are going to have to kill me." Two other officers testified that they responded to the call for help, joined the fray, and that it took all four of them to bring the struggling and yelling defendant to the ground.  One of these officers, Officer Tony Serra, testified that when he and his partner arrived on the scene they saw Officers Conway and Bickerton struggling with the defendant over something in the defendant's hand and that Officer Bickerton yelled "he's got a gun."  The jury also heard the radio transmissions of the two officers initially involved in the struggle.  On one of the transmissions the jury heard Officer Conway first calmly state they had a man with a gun and then yell for backup.  They also heard a clearly winded Officer Bickerton report to dispatch after the struggle that the man with the gun was now in custody.

The defendant asserts that the officers have a motive to lie

because they "seriously injured" the defendant and that his girlfriend, Samia Hicks, who testified on his behalf, is more worthy of belief.  The officers did not deny that they struck the defendant with a gun, a radio and a flashlight, all in an effort to get him to release his hold on the gun he was threatening to shoot them with.  Further, the medical records- Exhibits 17 and 18 offered by the defendant and admitted without objection by the government-showed that the defendant suffered a "small" 1-inch laceration on his head and was released after treatment.  Emily Howard, the Emergency Medical Technician who responded to the police station after the defendant's arrest, also testified that the defendant pretended to be unconscious until he found out he was going to the hospital.  In deciding whose testimony to credit, the jury also had before it the evidence of Ms. Hicks' prior criminal record and could evaluate whether she had a motive to lie to help her boyfriend.  Indeed, credibility determinations are properly the province of the jury and there is simply no basis for this Court to disturb the decision that the members of the jury reached.  This is not an "exceptional case" where there is a serious risk that a "miscarriage of justice" has occurred. *See United States v. Freeman*, 228 F.3d 332, 343 (1st Cir. 2000)("the judge is 'not a thirteenth juror, much less [is] he a super-juror whose views of credibility could override the jury's verdict.'")

Finally, as he did at trial, defense counsel highlights the testimony of the fingerprint examiner who lifted a latent print from the grip of the gun and determined that it had not been left by the defendant. As the testimony at trial established, the grip had been wrapped with electrical tape when seized and was still bound with the electrical tape when examined by the fingerprint expert. The fingerprint examiner testified that the print was discovered on the grip –under where the tape had been–and that he could not state how long print had been there.

## CONCLUSION

The defendant was given a fair trial and vigorously represented by experienced counsel. The jury heard the evidence, listened to the arguments, and unanimously voted to convict. Because that verdict is fully supported by substantial evidence establishing that the defendant possessed the gun and ammunition, the motion for judgment of acquittal, or in the alternative for a new trial, should be denied.

    Respectfully submitted,

    MICHAEL J. SULLIVAN
    United States Attorney

By: /s/ Sandra S. Bower
    SANDRA S. BOWER
    JOHN A. WORTMANN
    Assistant U.S. Attorneys
    One Courthouse Way
    Boston, MA 02110
    (617) 748-3184

<u>Certificate of Service</u>

    I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 21, 2006.

                                   <u>/s/ Sandra S. Bower</u>
                                   SANDRA S. BOWER
                                   Assistant U.S. Attorney