UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.           ) | Criminal No. 05-10237-MLW |
| ) | |
| ANTOIN QUARLES COMBS    ) | |
| ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A VARIANCE

The government hereby opposes Defendant Antoin Quarles Combs' request for a "variance" from the 235 to 293 month applicable sentencing guidelines range that United States Probation has correctly concluded applies in his case. Because of the defendant's horrific record (which includes five ACC predicates) and the facts in this case (in which the defendant drew a loaded firearm on two Boston police officers during an otherwise routine traffic stop and then injured both officers during the resulting violent struggle) the government recommends that the defendant be incarcerated for a term of 264 months, which is the middle of the applicable guidelines range. The government submits this memorandum in response to the defendant's motion and in support of its own recommendation.

*The nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. §3553(a)(1).*

As the Court is aware from presiding over the trial, this was not a case where the gun was merely "possessed." Rather, in

the wee hours of May 23, 2005, the defendant pulled this gun from his waistband, pointed it "in the direction" of the two officers who had directed him out of the car, and threatened to "shoot you mother f--kers" with it.  The two officers struggled with the heavier and taller Combs and even blows to Combs' head with the butt of an officer's service revolver did not stop the defendant from trying to get sole control of the gun.  Two other officers responded to the call for help, joined the fray, and it took all four of them to bring the struggling and yelling defendant, who is 6'4" tall and weighs 290 pounds, [PSR ¶96], to the ground. Finally, one of the officers was able to wrest control of the gun from the defendant.  This officer's fingernails were bleeding from the pressure he had exerted trying to get the gun.
The defendant states in his sentencing memorandum that given his disadvantaged youth and his descent into marijuana and alcohol abuse that it is "extraordinary" he is "still alive...." [Def. Mem. at 10].  The government agrees that it is extraordinary that someone was not killed as a result of the defendant's actions and that the Court's sentence should reflect that fact.

    Nor was this the defendant's first violent encounter with law enforcement.  Indeed, he was convicted in February 2004 (just slightly more than a year before his arrest in this case) of assault and battery and resisting arrest. [PSR ¶46].  The PSR notes that the police report indicates that officers responded to

the apartment of Tamika Morgan, the mother of one of his children (the baby reportedly died at birth in 2003, [PSR ¶90]), and she told police that the defendant had kicked in her door.[1]  When police located the defendant, they told him to put his hands up, he said "For what?" and swung at the officer.  A physical struggle ensued and the officer and the defendant went through a fence.  Another officer "tackled" the defendant who was "violently resisting" them. The defendant was sentenced to 18 months for this offense, but the sentence was suspended with probation to February 2006. [PSR ¶46].  Ironically, the defendant was on probation for this fight with police officers when he was arrested for the current offense.

The defendant also was convicted in 1997 of carrying a dangerous weapon and two counts of assault and battery on a police officer for which he was sentenced to one year in the House of Corrections. [PSR ¶44].  Additionally, the PSR is replete with other examples of this defendant's life of violent and dangerous behavior–going back some 15 years:  malicious destruction of property [PSR ¶38]; possession of a firearm (at the age of 17) [PSR ¶39]; sale of hallucinogen/narcotic [PSR ¶41][2]; manufacturing/distributing a Class B controlled substance

---

[1]   Ms. Morgan obtained a restraining order against the defendant as a result of this incident.

[2]   The defendant was convicted in this case using the name
(continued...)

[PSR ¶43]; escape [PSR ¶45], and possession of a Class D controlled substance with intent to distribute [PSR ¶ 47]. The defendant also has outstanding warrants in four additional pending cases in New Hampshire and Massachusetts. [PSR ¶¶54-57]. This defendant has been committing crimes at least for half of his life, and certainly his entire adult life.  The end result of the May 23, 2005, struggle on Ashmont Street could just as easily have been a murder trial in Suffolk Superior Court, with one or more dead police officers as victims.  Short of that, it is difficult to imagine a more serious offense than the one here.

### *The need for the sentence imposed.18 U.S.C. §3553(a)(2).*

A sentence at the mid to high end of the guidelines range is also necessary to reflect the seriousness of the offense, to deter the defendant in particular, as well as others generally, and to protect the public from the defendant.  18 U.S.C. §3553(a)(2)(A),(B) &(C).  As described above, the government submits that because the defendant chose to pull a weapon, this incident could very easily have ended in death or serious bodily injury.  That it did not end in the defendant being shot is attributable to the professionalism and restraint of the Boston police officers in this case.  And this emergency situation was *solely* due to the defendant's conduct.  Instead of obeying the

---

[2] (...continued)
"Chris Brown."

officers' commands, the defendant chose to resist and to fight as he has on at least two other occasions when confronted by law enforcement.  This was an extremely serious offense for which the defendant should be punished severely.  A sentence in the middle of the applicable guideline range will deter the defendant from committing other crimes and protect the public from the defendant.  Society needs Mr. Combs to be locked up and for a very long time.

### *The kinds of sentence and sentencing range established [by the guidelines]. 18 U.S.C. § 3553(4).*

The government's recommended sentence is within the applicable sentencing guidelines range.  The guidelines' range reflects the Sentencing Commission's determination that a felon who has possessed a gun, and who has a record like Combs', should under ordinary circumstances receive a sentence somewhere between 235 to 293 months.  Combs argues, however, that his disadvantaged upbringing and his substance abuse warrant a lower sentence, that Congress has determined that a 15-year sentence is "appropriate and reasonable" in most cases involving defendants with criminal histories like his, and that he should not be penalized for "exercising his constitutional rights" and going to trial.

First, the defendant argues that his lack of guidance as a youth is "extraordinary" and that he had been "abandoned" by both of his parents by the age of 14 and forced to "fend for himself."

[Def. Mem. at 9-10]. The government submits that the defendant's childhood, although certainly not ideal, is far from tragic, let alone extraordinarily so. He lived in a housing project, was poor and witnessed violence in the neighborhood and at home. Although his father reportedly broke his mother's jaw, which led to her leaving the defendant and his father, the defendant described the punishments that his father would impose on him as "no TV" and not being allowed to go outside for a certain time. [Def. Mem. at 2]. Indeed, the defendant also told the Probation Officer that his father had him removed from a school located "in the projects" in order for the defendant to avoid "negative influences." [PSR ¶111]. At the age of 14, his father sent the defendant to live with Betty Quarles with whom he reports a "good relationship," [PSR ¶71], and who he considered his mother. [PSR ¶71; Def. Mem. at 3]. He soon got into trouble with weapons and violence while attending high school, that is, carrying a knife at Dorchester High when he was a sophomore and fights with other students at McKinley School. [Def. Mem. 3-4; PSR ¶¶ 111, 113]. Ms. Quarles sought help because she was concerned about the path he was on and he was placed in the Hayden School, operated by the DSS, [PSR ¶ 113; Def.Mem. at 4], again an apparent effort by a caring adult to provide guidance to the defendant. He completed the eleventh grade there, but was incarcerated during what would have been his senior year. [PSR ¶113].

The defendant is a 32-year-old man who has committed crime after crime after crime, and attempts to place the blame for his record on everyone but himself. He reports a good relationship with Betty Quarles who took him in at the age of 14 and who he describes as his mother. Yet, he continued down the path of violence and criminal conduct that has led him to this courtroom today.

The defendant also argues that the 15-year minimum mandatory sentence under the ACCA reflects a Congressional determination that a 15-year sentence is sufficient to meet the sentencing goals of 18 U.S.C. § 3553(a). [Def. Mem. at 8]. By most often describing the sentence provided by 18 U.S.C. § 924(e) as a "mandatory" 15-year-term rather than what it actually is, that is, a term of "not less than fifteen years," the defendant wishes the Court to ignore that Congress determined that defendants with prior convictions for three or more violent felonies or serious drug offenses should be sentenced to a minimum, that is, *at least* 15 years. Fifteen years is the floor, not the ceiling. See United States v. Weems, 322 F.3d 18, 26 (1st Cir. 2003)(rejecting the argument that phrase "not less than fifteen years" is a statutory maximum as well as the minimum in case where defendant convicted of being a felon in possession sentenced to 282 months imprisonment).

Finally, the defendant argues that if he had pleaded guilty,

-7-

his guidelines range would have been 168 to 210 months.  He contends that he should not be penalized for exercising his constitutional right to go to trial.  It is true that if the defendant pleaded guilty and accepted responsibility for his conduct, his guidelines range would be lower.  It is appropriate, however, to sentence someone more leniently who accepts responsibility for his criminal conduct and demonstrates remorse.  That is so because such an individual is less likely to re-offend and society is in less need of protection from that person.[3]  Not only has the defendant not accepted responsibility for his conduct, he maintained at trial and continues to maintain post-trial that he did not commit the offense.  More than that, he presented a defense that he was the victim of a brutal, savage and unprovoked attack by these Boston police officers who then lied to cover up their own behavior.  Of course, by its verdict the jury rejected this defense and determined that the defendant did, in fact, have the gun.  The defendant is not being penalized for going to trial; he is to be punished, and should be punished, for his extremely dangerous and violent behavior that night.  It is perfectly appropriate to punish an unrepentant and

---

[3] The acceptance of responsibility reduction "recognizes legitimate societal interests.  For several reasons, a defendant who clearly demonstrates acceptance of responsibility for his offense ... is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility."  USSG § 3E1.1, Background.

unremorseful defendant more severely than one who has recognized the error of his ways and seeks to do better in the future. United States v. Henry, 883 F.2d 1010, 1011-12 (11th Cir. 1989)(holding that the acceptance of responsibility guideline did not unconstitutionally impinge on a defendant's constitutional trial rights but that it instead "recognizes societal interest in the reduction of crime, restitution, early withdrawal from criminal activity, withdrawal of criminals from positions of trust and responsibility, and the increased potential for rehabilitation among those who feel and show true remorse for their anti-social conduct."), cited with approval in United States v. Paz Uribe, 891 F.2d 396, 400 (1st Cir. 1989)(denial of acceptance of responsibility reduction for a defendant who continued to maintain his innocence after trial is "not an impermissible burden on the exercise of constitutional rights.")

**CONCLUSION**

    For the foregoing reasons, the government recommends that the defendant be sentenced to a term of imprisonment of 264 months.

                                Respectfully submitted,

                                MICHAEL J. SULLIVAN
                                United States Attorney

By: /s/ Sandra S. Bower
    SANDRA S. BOWER
    JOHN A. WORTMANN, JR.
    Assistant U.S. Attorneys
    One Courthouse Way
    Boston, MA 02110
    (617) 748-3184

Certificate of Service

    I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 28, 2006.

                                /s/ Sandra S. Bower
                                SANDRA S. BOWER
                                Assistant U.S. Attorney